UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MELISHA S.[1],
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 2:23-cv-1495
Watson, J.
Litkovitz, MJ.

**REPORT AND RECOMMENDATION**

Plaintiff Melisha S. brings this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for disability insurance benefits (DIB). This matter is before the United States Magistrate Judge for a Report and Recommendation on plaintiff's statement of errors (Doc. 10), the Commissioner's response in opposition (Doc. 11), and plaintiff's reply memorandum (Doc. 12).

**I. Procedural Background**

This is plaintiff's second case before this Court. On February 22, 2016, plaintiff protectively filed an application for DIB alleging disability beginning October 20, 2015, due to multiple sclerosis (MS), atrial fibrillation, and optic neuritis. (Tr. 312-18, 347). Her application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge Karen B. Kostol (ALJ Kostol). Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing on October 18, 2018. (Tr. 31-67). On December 4, 2018, ALJ Kostol issued a decision denying plaintiff's

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

application. (Tr. 8-30). The Appeals Council denied plaintiff's request for review, making the ALJ's decision final for purposes of judicial review. (Tr. 1–7).

After an appeal to this Court, the matter was remanded to the Commissioner for further proceedings. *See Melisha S. v. Comm'r of Soc. Sec.*, No. 2:19-cv-5277 (S.D. Ohio). (Tr. 1085-1127). On remand, ALJ Sabrina Tilley conducted a hearing on December 16, 2021. (Tr. 1042-1054). She then retired, and ALJ Nathan Brown conducted a hearing on December 28, 2022. (Tr. 1004-1041). ALJ Brown denied plaintiff's application on February 3, 2023. (Tr. 972-1003). Plaintiff did not request review by the Appeals Council opting to directly file suit with this Court.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

ALJ Brown applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. [Plaintiff] last met the insured status requirements of the Social Security Act on September 30, 2021.
>
> 2. [Plaintiff] did not engage in substantial gainful activity during the period from her amended alleged onset date of September 12, 2016 through her date last insured of September 30, 2021 (20 CFR 404.1571 *et seq.*).
>
> 3. Through the date last insured, [plaintiff] had the following severe impairments: multiple sclerosis; atrial fibrillation; migraines; scoliosis; asthma; left foot plantar fasciitis and calcaneal spur; Achilles' tendinitis of the left lower extremity; and obesity (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, [plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the [ALJ] finds that through the date last insured, [plaintiff] had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can operate foot controls with the left foot frequently. [Plaintiff] can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, and crawl occasionally. [Plaintiff] can never work at unprotected heights, never around moving mechanical parts, in atmospheric conditions occasionally, in extreme cold occasionally, in extreme heat frequently, and never in vibration. She can operate a motor vehicle frequently. She needs a cane to ambulate on all surfaces.

6. Through the date last insured, [plaintiff] was unable to perform any past relevant work (20 CFR 404.1565).[2]

7. [Plaintiff] was born [in] … 1982 and was 38 years old, which is defined as a younger individual age 18-44, on the date last insured (20 CFR 404.1563).

8. [Plaintiff] has a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is "not disabled," whether or not [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering [plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [plaintiff] could have performed (20 CFR 404.1569 and 404.1569a).[3]

11. [Plaintiff] was not under a disability, as defined in the Social Security Act, at any time from September 12, 2016, the amended alleged onset date, through September 30, 2021, the date last insured (20 CFR 404.1520(g)).

(Tr. 978-94).

---

[2] Plaintiff's past relevant work was a composite job consisting of a medical secretary, a sedentary, skilled job and a medical assistant, a light, performed at the medium level, skilled job; and a composite job consisting of billing clerk, a sedentary, semi-skilled job, medical secretary and medical assistant. (Tr. 992, 1028-31).

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative sedentary, unskilled occupations such as document preparer (17,000 jobs nationally), press clippings cutter and paster (7,000 jobs nationally), and surveillance system monitor (8,000 jobs nationally). (Tr. 993, 1032).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill,* 587 U.S. __, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff raises a single assignment of error: that the ALJ erred at step three of

the sequential analysis by failing to consider whether her severe physical impairment of multiple sclerosis medically equals listing 11.09, the listing for multiple sclerosis. Plaintiff acknowledges that she does not meet listing 11.09, but she contends that the ALJ failed to adequately address whether her impairment is the medical equivalent of listing 11.09, as the medical expert concluded in his interrogatories. (Doc. 10 at PageID 2004-08). The Commissioner counters that the ALJ's step three finding is supported by substantial evidence, and the ALJ properly assigned Dr. Geneve's opinion no weight in explaining why the medical evidence does not reflect listing level severity. (Doc. 11 at PageID 2013-19).

### 1. Step three of the sequential evaluation process

At step three, the ALJ must compare a claimant's impairments to an enumerated list of medical conditions that the Social Security Administration has deemed "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). Each Listing describes "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 404.1525(c)(3). The claimant bears the burden to show she has an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant meets or medically equals all of the criteria for a listed impairment, she is disabled; otherwise, the evaluation proceeds to step four. 20 C.F.R. § 404.1520(d)-(e); *see also Rabbers*, 582 F.3d at 653 ("A claimant must satisfy all of the criteria to meet the listing.").

If a claimant's impairment does not meet a listed impairment, the claimant will still be found disabled at step three if her impairment is the medical equivalent of a listing. 20 C.F.R. § 404.1520(a)(4)(iii). To be medically equivalent, the impairment must be "at least equal in

severity and duration to" the listed impairment's criteria.  *LaPlante v. Comm'r of Soc. Sec.*, No. 23-1460, 2024 WL 400329, at *3 (6th Cir. Feb. 2, 2024) (quoting 20 C.F.R. § 404.1526(a)).  An impairment is medically equivalent to a listing if medical findings related to the impairment are at least of equal medical significance to the findings necessary to meet the listings.  20 C.F.R. § 404.1526(b)(1).  *See LaPlante*, 2024 WL 400329, at *3; *Tipton v. Comm'r of Soc. Sec.*, No. 2:14-cv-1209, 2015 WL 3505513, at *5 (S.D. Ohio June 3, 2015), *report and recommendation adopted*, 2015 WL 3952347 (S.D. Ohio June 29, 2015).  The claimant bears the burden of presenting "medical findings equal in severity to *all* the criteria for the one most similar listed impairment" to establish equivalency.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in the original).

The ALJ must "actually evaluate the evidence," compare it to the requirements of the relevant listing, and provide an "explained conclusion, in order to facilitate meaningful judicial review" of a step three finding.  *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011).  *See LaPlante*, 2024 WL 400329, at *4.  The ALJ must compare the medical evidence with the components of listed impairments in considering whether the condition is equivalent in severity to the medical findings for a listed impairment.  *See Lawson v. Comm'r of Soc. Sec.*, 192 F. App'x 521, 529 (6th Cir. 2006).  When performing this analysis, the ALJ must "consider all evidence in [the] case record about [the claimant's] impairment(s) and its effects on [the claimant] that is relevant to this finding."  20 C.F.R. § 404.1526(c).

2. **Listing 11.09 criteria**

Listing 11 applies to neurological disorders.  When evaluating the neurological disorder of multiple sclerosis, the Commissioner will "consider [claimants'] other impairments or signs and symptoms that develop secondary to the disorder, such as fatigue; visual loss; trouble sleeping;

impaired attention, concentration, memory, or judgment; mood swings; and depression." 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.00(N)(2). Listing 11.09 applies specifically to multiple sclerosis. To satisfy listing 11.09, a claimant must have multiple sclerosis accompanied by:

> A. Disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities.
>
> OR
>
> B. Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and in one of the following:
>
> 1. Understanding, remembering, or applying information (see 11.00G3b(i)); or
> 2. Interacting with others (see 11.00G3b(ii)); or
> 3. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
> 4. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. pt. 404, subpt. P, app. 1, § 11.09.

Plaintiff acknowledges that her multiple sclerosis does not meet the requirements of listing 11.09. (Doc. 12 at PAGEID 2023). However, she contends that her impairments equal listing 11.09, as Dr. Nikerson Geneve's interrogatories stated. (*Id.*).

### 3. Opinion of Dr. Nikerson Geneve, D.O.

Before her retirement, ALJ Sabrina Tilley asked Dr. Nikerson Geneve, D.O., to complete medical interrogatories. (Tr. 1938). After reviewing the medical records, Dr. Geneve identified plaintiff's impairments as multiple sclerosis, atrial fibrillation, chronic migraines, radiculopathy of the lumbar region, optic neuritis, history of asthma, plantar fasciitis, Achilles tendinitis, and high grade partial tear of the lateral cord of the plantar fascia. (Tr. 1940). Dr. Geneve concluded that "[t]he above listing of 11.09 is equaled with sufficient recorded documentation such that [plaintiff's] listed physical impairments equal the above listing of 11.09 as of approximately May

8

2018." (Tr. 1944). In support of his conclusion, Dr. Geneve cited to the following medical records (Tr. 1944-45):

1. An October 7, 2015 MRI report identifying "several abnormal foci of white matter signal hyperintensity with 8-9 mm plaque-like size and appearance in the bilateral pericallosal and corona radiata as well as left subcortical white matter interfaces with appearance suspect for demyelinating process such [as] multiple sclerosis." (Tr. 538).

2. A May 2, 2016 medical evaluation in which plaintiff presented with normal and symmetric motor function, intact sensation, and normal gait and station. (Tr. 718).

3. A July 30, 2016 medical evaluation in which plaintiff presented with normal and symmetric motor function, intact sensation, and normal gait and station. (Tr. 748).

4. A September 12, 2016 consultative examination with Ellen Offutt, M.D., in which plaintiff self-reported that she suffers from extreme fatigue and "can walk about 50 yards and then her legs get crampy." (Tr. 753).

5. An October 15, 2016 medical evaluation in which plaintiff presented with normal and symmetric motor function and normal gait and station. (Tr. 767).

6. A May 1, 2018 physical therapy evaluation during which plaintiff reported increased weakness, functional endurance, and impaired posture following two months of being bedridden due to severe depression. (Tr. 1585).

7. A September 27, 2018 neurological examination noting that plaintiff used a single-prong cane. (Tr. 1756).

8. A March 7, 2019 neurological examination noting that plaintiff used a single-prong cane, but her proprioception and vibration were normal in both legs. (Tr. 1512-13).

9. An April 12, 2019 MRI report finding more pronounced "numerous foci of signal abnormality involving the periventricular white matter regions" consistent with plaintiff's history of multiple sclerosis. (Tr. 1531).

10. A May 21, 2019 neurological examination during which plaintiff reported falling "several times due to her leg just giving way suddenly." (Tr. 1539).

11. Plaintiff's June 24, 2019 prescription for a wheeled walker with seat. (Tr. 1558).

12. A November 14, 2019 neurological examination indicating that plaintiff "is now using a Rollator." (Tr. 1724).

13. An August 14, 2020 MRI report on plaintiff's left ankle documenting plantar fasciitis with a "[h]igh-grade partial tear of the lateral cord of the plantar fascia at its origin." (Tr. 1668).

14. A September 10, 2020 thoracic spine MRI report revealing "normal alignment of the spine," "[n]o abnormal cord signal," and "[n]ormal MRI of the thoracic spine pre and post contrast." (Tr. 1842).

15. A September 23, 2020 progress note from the Ohio State University Multiple Sclerosis and Neuroimmunology Center indicating that plaintiff improved after exercise and physiotherapy and "no longer is using a walker. She walks without assist now." (Tr. 1712). Her physical examination revealed normal gait. (Tr. 1717).

16. A November 4, 2021 physical therapy assessment reporting "relapsing-remittent MS" and test results documenting limited left side range of motion, decreased strength and flexibility in her lower extremities, "poor postural awareness, limited activity tolerance, and impaired overall functional mobility." (Tr. 1924). The report further noted that her "deficits are limiting her ability to tolerate prolonged positions, ambulate, perform functional transfers, and perform heavy chores around her home." (*Id.*).

### 4. The ALJ's step three finding

In his decision, ALJ Brown analyzed listing 11.09 at step three and concluded that plaintiff's multiple sclerosis:

> neither meets nor equals the listing prior to the date last insured. For example, [plaintiff] does not have disorganization of motor function in two extremities established within the record. This is demonstrated by various physical examinations throughout the record, including the consultative examination, neurology records, and even primary care records (*see generally* 6F; 9F; 15F; 16F; 18F; 22F; 32F; 39F; 44F; 46F; 48F; 55F). For example, physical examinations do not establish an extreme limitation in standing, balancing, walking, or using the upper extremities. While a cane has been found to be medically necessary herein, this is based primarily on [plaintiff]'s subjective reports of falls, rare findings of muscle weakness, and [plaintiff]'s use of a cane intermittently within the record. The allowance for an assistive device is not equivocal to an extreme limitation. [Plaintiff] also does not have a marked limitation in physical functioning as established by her performance during physical examinations and physical therapy. She also does not have a marked limitation in any "paragraph B" area of functioning as established by the analysis above. Therefore, [plaintiff]'s impairments did not meet or medically equal the listing.

(Tr. at 982).

### 5. The ALJ's step three finding is supported by substantial evidence.

Plaintiff contends that the ALJ failed to properly consider Dr. Geneve's opinion that plaintiff's multiple sclerosis medically equaled listing 11.09 in his step three analysis. (Doc. 10 at PAGEID 2004-08). To determine whether a listing is medically equaled, the

11

ALJ must compare the medical evidence with the components of listed impairments in considering whether the condition is equivalent in severity and duration to the medical findings for a listed impairment. *LaPlante*, 2024 WL 400329, at *3. *See Lawson*, 192 F. App'x at 529. If, as here, plaintiff has an impairment described in appendix 1, the Commissioner "will 'find that [the] impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria.'" *LaPlante*, 2024 WL 400329, at *3 (quoting 20 C.F.R. § 404.1526(b)(1)).

In his decision, the ALJ refers to the interrogatories Dr. Geneve completed and assigned his opinion no weight, explaining:

> Dr. Geneve responded to a medical [interrogatory] and opined [plaintiff's] multiple sclerosis equaled listing 11.09 as of May of 2018 (58F/7). In support of this, Dr. Geneve cited to [plaintiff's] use of a cane beginning in September of 2018 (49F/52). The undersigned notes use of a cane was discussed prior to this point within the record (e.g., 27F/4, 8). Thereafter, Dr. Geneve cites to notes wherein [plaintiff] was using a cane and had subjective reports of falls. Then, Dr. Geneve cited to [plaintiff] being prescribed a wheeled walker and being documented using a rollator (43F/1; 49F/24). This opinion is inadequately supported as it fails to cite to objective physical examination findings supporting use of a two-handed assistive device. As detailed in the lengthy evidentiary review above, [plaintiff] is overwhelmingly documented to ambulate entirely unassisted or with only a single cane. Furthermore, merely noting [plaintiff's] use of an assistive device during an office visit does not mean it is medically necessary or otherwise constitute[s] an endorsement that [plaintiff] is required to utilize the device. [Plaintiff] briefly remained bedridden due to alleged depressive symptoms around April of 2018, thereafter reporting increased weakness warranting a cane (26F/2; 27F/4). She was sent to physical therapy wherein it was noted she was performing activities, such as chasing her dog and remodeling her home (26F/22; 47F/15). This is clearly inconsistent with listing level dysfunction or the need for a two-handed assistive device. In fact, a two-handed assistive device was not even mentioned within the record until later and was rarely documented actually being used. Furthermore, [plaintiff] confirmed statements within the record were accurate noting she did not require a walker or other assistive device (53F/14; Testimony).

(Tr. 991-92).

ALJ Brown's step three analysis of listing 11.09 is supported by substantial evidence. Dr. Geneve indicated plaintiff suffered impairments medically equal to listing 11.09 as of May 2018. However, as the ALJ reasonably determined, plaintiff's medical records fail to support impairments severe enough to be equivalent to the extreme limitation[4] in listing 11.09(A), and even Dr. Geneve did not find any criteria equivalent to listing 11.09(B).

For example, plaintiff's September 27, 2018 neurological examination on which the ALJ relied (Tr. 986) revealed normal vibration and proprioception in both legs, and she completed timed walking trials using only a single-prong cane. (Tr. 1440-41). Plaintiff's physical examinations at least through 2019 revealed normal and symmetric motor function with normal gait and station. (Tr. 990, citing Tr. 681, 687, 689, 697, 718, 721, 748, 767, 771, 874, 881, 883, 889, 896, 900, 1498, and 1561). On March 7, 2019, plaintiff used a single-prong cane during her neurological examination, which revealed 5 of 5 strength in 23 of 24 muscle groups and 4+ strength in the remaining group. (Tr. 986, citing Tr. 1512). The March 7, 2019 examination notes on which the ALJ relied also reflect "[n]ormal stride length, arm swing, and base width" and "[a]ble to walk on toes, heels, and tandem walk." (Tr. 1513). As the ALJ noted, plaintiff's May 21, 2019 neurological examination revealed similar findings, even though she reported experiencing falls. (Tr. 986, citing Tr. 1539-44). During her November 14, 2019 examination, plaintiff used a rollator, but her physical examination again reflected 5 of 5 strength in 23 of 24

---

[4] "Extreme limitation" as used in listing 11.09 "means the inability to stand up from a seated position, maintain balance in a standing position and while walking, or use your upper extremities to independently initiate, sustain, and complete work-related activities." 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.00(D)(2). "Inability to stand up from a seated position means that once seated you are unable to stand and maintain an upright position without the assistance of another person or the use of an assistive device, such as a walker, two crutches, or two canes." *Id.* at § 11.00(D)(2)(a). "Inability to maintain balance in a standing position means that you are unable to maintain an upright position while standing or walking without the assistance of another person or an assistive device, such as a walker, two crutches, or two canes." *Id.* at § 11.00(D)(2)(b).

muscle groups with intact sensation, and normal vibration and proprioception in both legs. (Tr. 986, citing Tr. 1728).

The ALJ also correctly noted that by September 23, 2020, plaintiff walked without assistance. (Tr. 986, citing Tr. 1712). Her neurological examination revealed a normal gait with 5 of 5 strength in all 24 muscle groups, normal vibration and proprioception in both legs, and intact sensation in both upper and lower extremities. (*Id.*, citing Tr. 1717). In January and September, 2021, plaintiff again required no assistive device and exhibited "stable gait" and "normal tandem walking." (Tr. 986 and 987, citing Tr. 1838 and 1919).

Although acknowledging that plaintiff does not meet the criteria of listing 11.09, plaintiff argues that Dr. Geneve "is saying that there are 'other findings related to [that] impairment that are of at least of equal medical significance to the required criteria'" of listing 11.09. (Doc. 10 at PAGEID 2006 (quoting 20 C.F.R. § 404.1526(b)(1)). However, plaintiff fails to identify any additional evidence or findings beyond those records to which Dr. Geneve cited or that the ALJ failed to properly consider. (Doc. 10 at PAGEID 2004-08, Doc. 12).

As reflected in the ALJ's opinion, plaintiff suffers from several severe impairments, including multiple sclerosis. However, medical equivalency does not relieve a plaintiff of the need to demonstrate, at step three, that her impairment "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). *See Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 784 (6th Cir. 2017), *aff'd sub nom. Biestek v. Berryhill*, 139 S.Ct. 1148 (2019). "The Commissioner's regulation allows for variation in the number, type, or severity of [a plaintiff's] conditions, so long as the [plaintiff's] overall impairment is 'at least or equal medical significance' to a listed

14

impairment." *Biestek*, 880 F.3d at 784 (quoting 20 C.F.R. § 404.1526(b)(2)).  In this case, the ALJ's determination that plaintiff has failed to establish at least equal medical significance to a listed impairment is supported by substantial evidence.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Plaintiff's statement of errors (Doc. 10) be **OVERRULED** and the Commissioner's non-disability finding be **AFFIRMED**.

2.  Judgment be entered in favor of the Commissioner and this case be closed on the docket of the Court.

_____
Karen L. Litkovitz
Chief United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MELISHA S.,                                        Case No. 2:23-cv-1495
     Plaintiff,                                 Watson, J.
                                               Litkovitz, M.J.
    vs.

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).